IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

GUY T. STRINGHAM,

        Plaintiff,                    No. CIV S-05-0644 FCD GGH P

    vs.

J. BICK, et al.,

        Defendants.            ORDER

_____/

Introduction

       Plaintiff, a state prisoner proceeding pro se, seeks relief pursuant to 42 U.S.C. § 1983. Pending before the court is plaintiff's March 26, 2007, motion for appointment of expert witnesses.

Amended Complaint

       The court has previously set forth plaintiff's lengthy allegations and restates them herein. Findings and Recommendations, filed on January 8, 2007, pp. 1-5, adopted by Order, filed on March 15, 2007. Plaintiff is proceeding against ten defendants[1] in an amended

\\\\\

---

[1] Two defendants have been dismissed from this action. See Order, filed on May 16, 2006.

1

complaint (AC), filed on September 16, 2005.[2] The defendants are the California Department of Corrections and Rehabilitation (CDCR); California Medical Facility-Vacaville (CMF);[3] J. Bick; T. Donahue; R. Andreason; N. Khoury; J. Thomas; S. Murray; S. Moreno; T. Schwartz.

Plaintiff contends that he was issued one CDC 128-C medical chrono for cell housing with window tint on October 16, 2000, settling a grievance filing by plaintiff. Thereafter, the cell housing and window tint matters were divided into separate chronos; medical chronos, pursuant to CMF policy are valid for one year and thus must be renewed annually. Plaintiff filed two separate grievances when the medical chronos were not renewed. AC, p. 7.[4]

On May 16, 2001, after plaintiff had been moved to a cell where he was allowed to use window tint, staff ordered that he uncover his cell windows contrary to his medical chrono. AC, p. 8. On January 30, 2004, following dismissal of a prior action on the same matter for failure to exhaust administrative remedies, Case No. Civ-S-01-1211 WBS DAD P, plaintiff filed a grievance with respect to cell housing reviewed by defendant CMF Senior Medical Technical Assistant (MTA) T. Donahue, and denied by defendant CMF-V Chief Medical Officer (CMO) J. Bick. At the second level, plaintiff's grievance was reviewed by defendant R. Andreason, also, apparently, CMO at CMF, according to plaintiff, and denied by defendant N. Khoury, Chief Deputy of Clinical Services. AC, p. 9. At the third level, N. Grannis did not review the appeal "due a time constraint pretense."[5]

After the grievance processes within CDCR and the Board of Control were complete, defendant Correctional Sergeant S. Murray moved plaintiff to a dormitory bed on

---

[2] The original complaint was filed on April 4, 2005.

[3] Plaintiff proceeds against the entity defendants solely on his claims pursuant to the Americans with Disabilities Act (ADA). See Order, filed on March 15, 2006, n. 1.

[4] Only the court's electronic pagination is referenced.

[5] Allegations with respect to N. Grannis and M. Cry will not be referenced further, as these parties have been dismissed from this action.

December 17, 2004, placing plaintiff in view of large exterior windows and exposing him to large fluorescent lights from 5:00 p.m. to 11:30 p.m. This exposure caused plaintiff to suffer several migraine headaches until he was moved to a different dorm bed on January 27, 2005. AC, p. 10.

Plaintiff's new location, where he remained at the time of the filing of his amended complaint, placed him directly before the middle of a large exterior window, causing him numerous migraine headaches. AC, pp. 10-11.

Plaintiff's neurologist, Dr. Cappazoli, not a defendant, had prescribed Zolmitriptan, apparently for plaintiff's migraines, but the prescription had lapsed because plaintiff did not need it while plaintiff had been housed in a cell with tinted windows. When plaintiff tried to obtain Zolmitriptan, after the prescription had been renewed as of December 16, 2004, it was not made available to him until February 1, 2005. AC, p. 11.

On January 27, 2005, the day plaintiff moved to the second dorm location, P-139-L, defendant S. Moreno, CMF Unit 1 Facility Captain, ordered the Unit 1 staff to keep the dorm lights on from 8:00 a.m. until 10:00 p.m., for institutional safety and security purposes. This completely deprived plaintiff of the ability to avoid all brightly lit areas. Id. When plaintiff attempted to address his medical problem informally, defendant Bick apparently failed to review plaintiff's medical file because in his written response, he stated wrongly that the issue did not implicate the ADA. Plaintiff's Type I ("brittle") diabetes and visual light inability or impairment are conditions limiting plaintiff's major life activities covered by the ADA. AC, pp. 11-12. His visual light impairment has been recognized as an ADA disability in his records since April 5, 2000. AC, p. 12.

Plaintiff states that a copy of a May 25, 2005, CDC-128-C medical chrono (Exhibit (Exh.) 31 to AC, p. 126) was brought to defendant Thomas, who thereafter refused to move plaintiff to a cell, thus showing deliberate indifference to plaintiff's serious medical

\\\\\

1 condition. Id. The text of the copy of the chrono plaintiff attaches,[6] containing signatures by
2 both Dr. Capozzoli and defendant CMO Bick, states:

> I would recommend that Mr. Stringham be provided with cell
> housing (single cell housing not required).  Mr. Stringham has
> diabetes with severe neuropathy involving also autonomic
> neuropathy affecting his bowel and bladder control.  Additionally,
> he has diabetic retinopathy and vascular headaches with
> photophobia.  Mr. Stringham has a chrono which permits him to
> wear dark glasses and cover his cell windows with tinting material
> for the above diagnoses.  He is also wheelchair dependent as a
> result of his neuropathy.  For all of the above reasons, I recommend
> that he be allowed to live in a cell rather than a dorm environment,
> which is less conducive to accommodating his above-mentioned
> medical needs.  This chrono is valid for one year (through May 15,
> 2006), subject to annual renewal and to custody and institutional
> safety requirements.

AC, pp. 12-13, 126.  (It appears in the copy of the exhibit showing both signatures of Dr. Capozzoli and defendant Dr. Bick that defendant CMO Bick has also underlined and initialed the last five words of the chrono referencing safety requirements).

When plaintiff informed Dr. Capozzoli that the chrono did not get him moved to a cell on July 13, 2005, Dr. Capozzoli noted in plaintiff's medical file that he told plaintiff he should appeal the decision "since it was a medical recommendation based on his diagnosis & that it was a strong recommendation that I would support if asked to by the committee." AC, p. 13 & Exh. 32 at p. 127.

Plaintiff points to various exhibits demonstrating his need for cell housing because he is unable to safely navigate a dorm environment due to, inter alia, "severe sensorimoto polyneuropathy" or numbness in his feet, and "right Charcot joint" or "Charcot foot." AC, p. 13, Exhs. 1 - 6, 17-19, 26-29, at pp. 96-101, 112-114, 121- 124.

Plaintiff claims that dorm housing has not allowed for safe passage of his wheelchair between lockers and bunk beds and that his lack of immediate toilet access in a dorm,

---

[6] The court notes that defendant Bick, in response to plaintiff's motion, has attached, inter alia, a copy of this identical chrono as part of attachment 2, p. 13, to his declaration.

4

1 which he has to share with up to eleven other inmates, has caused him episodes of pain and
2 suffering.  AC, p. 14.

3 Plaintiff cannot safely operate his wheelchair in the dorm, requiring that he walk
4 some 25 feet to the restroom, numerous times during the day and night, without handrails,
5 causing him to lose his balance and stumble into bunk beds and lockers.  AC, pp. 14, 18-19.

6 Plaintiff alleges that after he had been allowed window tint for four years,
7 defendant Bick inexplicably refused to approve plaintiff's window tint needs in March of 2004,
8 thus facilitating the staff's moving plaintiff to a dorm.  When, in February of 2005, defendant
9 Bick reversed himself and approved plaintiff's access to window tint (AC, Exh. 29, p. 124),
10 plaintiff had been placed in a dorm for three months and custody staff refused to move him into a
11 cell where he could make use of window tint.  AC, p. 15.

12 Plaintiff's headaches, which arise daily from his exposure to and intolerance of
13 light, lead to at least two migraines a week, and have occurred since his December 17, 2004,
14 move to a dorm.  Defendants are aware of plaintiff's inability to tolerate light but are deliberately
15 and callously indifferent to his serious medical needs in violation of his rights under the Eighth
16 Amendment.  AC, pp. 15-16.

17 Defendants' assertion (AC, Attachment 2H p 66) that plaintiff's light intolerances
18 can be ameliorated with dark glasses is untrue because plaintiff requires prescription lenses and
19 the dark glasses do not fit well enough to block intolerable peripheral light; defendants'
20 representation that the dark glasses can fit over plaintiff's prescription glasses runs counter to the
21 manufacturer's instructions.  AC, p. 17.  Moreover, plaintiff asks why, if plaintiff can be
22 otherwise adequately accommodated, he has been issued two subsequent chronos for tinted
23 windows.  AC, p. 17, Exhs. 29, 31 at pp. 124, 126.

24 In addition to alleging that defendants have violated his rights under the Eighth
25 Amendment, he also claims that he is totally medically disabled with regard to his need for an
26 orthotic brace with cane, wheelchair and crutches, that he is disabled under the ADA, 42 U.S. C.

5

§§ 12101, et seq., with respect to his Type 1 brittle insulin-dependent diabetic condition, with secondary medical complications as well as his headaches. AC, pp. 20-21. Plaintiff alleges that defendants are aware of his disabilities, provided accommodations for them for years, but now refuse to do so. AC, p. 21. Plaintiff seeks permanent injunctive relief under the ADA against the entity defendants in the form of being placed in cell housing for the remainder of his prison term; that he be allowed to affix window tint to exterior cell windows; that he maintain his dark eyeglasses as needed. Plaintiff seeks money damages from the individual defendants.

Motion for Appointment of Experts

Plaintiff avers that he will need an expert with respect to issues he has raised regarding a condition of photophobia, or an inability to tolerate light, as well as for his diabetes and a nerve damage condition in his lower extremities and stomach ("severe sensorimotor polyneuropathy and autonomic neuropathy"). Motion, p. 2. He maintains he needs an opthalmologist not employed by CDCR or CMF to avoid any conflict of interest and in the interest of justice and to establish his current photophobia condition. Id. Plaintiff states that he "will accept the testimony of Doctor Charles Crapotta, Certified Opthalmologist, who is familiar with plaintiff's eye condition(s) from former treatments of same, as is evidenced in Exhibits 4 (top), 5(top), and 6 (all in amended complaint) if he is available." Id. Plaintiff states that if Dr. Carpotta is not available, any certified opthalmologist not employed by CDCR and CMF is acceptable. Id.

To establish the two types of neuropathy from which he suffers, plaintiff states that he will accept the testimony of Dr. Nicholas Capozzoli, who is a Certified Neurologist, whose familiarity with plaintiff's neuropathy and migraines are evidenced in Exhibits 17 through 20 and 31 to his amended complaint. Motion, p. 2. If Dr. Cappozzoli is unavailable, plaintiff states that any certified neurologist not employed by CDCR and CMF would be acceptable. Id. at 3.

\\\\\

1        Finally, plaintiff asks for an Endocrinologist to "establish plaintiff's diabetic

2 condition ... in regard to his ADA claims," but does not know of one not employed by defendants

3 and thus makes no suggestion as to this individual. Id.

4        Plaintiff made a showing adequate to be granted a preliminary injunction in the

5 form of defendants having been enjoined to place plaintiff in a window tinted cell. See Order,

6 filed on March 15, 2007. In unsuccessfully opposing plaintiff's motion, the court found that

7 defendants had confirmed:

> that plaintiff suffers from myriad serious medical conditions....
> They do not dispute that until March of 2004, plaintiff was
> provided with cell housing with window tinting. Defendants do
> not contend that plaintiff's serious medical condition has any
> chance of ameliorating. Plaintiff has submitted evidence that his
> treating physician has continued to make a medical
> recommendation of his need for window tinting. Defendants,
> including a defendant physician, have explicitly conceded that
> plaintiff, incarcerated at CMF since 1989, has been a Type 1 brittle
> diabetic since his youth, who has developed other serious medical
> conditions, including diabetic retinopathy, photophobia,
> neuropathy, bowel and bladder issues. Defendant Bick affirms that
> since 1998, plaintiff has been classified as permanently mobility
> impaired in his lower extremities, averring that this means that he
> cannot walk up a flight of stairs or more than a hundred yards
> without walking aids. Defendant Bick, as previously noted,
> concedes that plaintiff's medical conditions "are all medical
> conditions that substantially limit plaintiff's major life activities
> and are therefore defined as a serious medical need pursuant to the
> Americans with Disabilities Act."

Findings and Recommendations, filed on 1/8/07, pp. 19-20, adopted by Order, filed on 3/15/07.

       Moreover, plaintiff points to supporting exhibits of experts, from whom he seeks further testimony, attached to his amended complaint.

       Given plaintiff's substantial medical allegations, at first blush, appointment of experts might appear warranted. However upon scrutiny, the essential medical facts seem subject to little dispute. The major issue revolves about accommodation of such given conditions in a prison setting. Given all the work entailed in the undersigned's chambers in procuring experts and briefing , and with all the potential for the appearance or advocacy on the part of the

7

court which inevitably is attached to the court's work in preparing the case, the undersigned believes that the need for court experts at present is insufficient.  The undersigned understands that he has discretion to order the appointment of experts, and even to have defendants pay for such experts, <u>McKinney v. Anderson</u>, 924 F.2d 1500, 1511 (9th Cir.1991), vacated on other grounds sub.nom., <u>Helling v. McKinney</u>, 502 U.S. 903 (1991).  The undersigned declines to exercise that discretion for the reasons given.[7]

Accordingly, IT IS ORDERED that plaintiff's March 26, 2007 (#44), motion for appointment of independent medical expert witnesses is denied.

DATED: 03/24/08

/s/ Gregory G. Hollows

UNITED STATES MAGISTRATE JUDGE

GGH:009
stri0664.dny

---

[7] Should defendants mount a significant challenge to what appears to be almost undisputed facts, the undersigned will reconsider the matter of appointed experts.