IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

GUY T. STRINGHAM,

      Plaintiff,               No. CIV S-05-0644 FCD GGH P

   vs.

J. BICK, et al.,

      Defendants.          <u>FINDINGS AND RECOMMENDATIONS</u>
_____/

<u>Introduction</u>

      Plaintiff, a state prisoner proceeding pro se, seeks relief pursuant to 42 U.S.C. § 1983.  Pending before the court is 1) defendants' motion for summary judgment, filed on 9/26/07, to which plaintiff filed his opposition on 10/26/07, after which defendants filed their reply on 11/21/07; and 2) plaintiff's cross-motion for summary judgment, filed on 12/07/07, to which defendants filed their opposition, on 2/01/08 (following the granting of an extension of time), to which plaintiff filed a reply on 2/25/08.

<u>Amended Complaint</u>

      The court has previously set forth plaintiff's lengthy allegations and restates them herein with any appropriate modification/editing.  Findings and Recommendations, filed on January, 8, 2007, pp. 1-5, adopted by Order, filed on March 15, 2007; see also, Order, filed on

1

3/24/08.   Plaintiff is proceeding against ten defendants[1] in an amended complaint (AC), filed on

9/16/05.[2]   The defendants are the California Department of Corrections and Rehabilitation

(CDCR); California Medical Facility-Vacaville (CMF);[3] J. Bick; T. Donahue; R. Andreason; N.

Khoury; J. Thomas; S. Murray; S. Moreno; T. Schwartz.

Plaintiff contends that he was issued one CDC 128-C medical chrono for cell

housing with window tint on October 16, 2000, settling a grievance filing by plaintiff.

Thereafter, the cell housing and window tint matters were divided into separate chronos; medical

chronos, pursuant to CMF policy are valid for one year and thus must be renewed annually.

Plaintiff filed two separate grievances when the medical chronos were not renewed.  AC, p. 7.[4]

On May 16, 2001, after plaintiff had been moved to a cell where he was allowed

to use window tint, staff ordered that he uncover his cell windows contrary to his medical

chrono.  AC, p. 8.  On January 30, 2004, following dismissal of a prior action on the same matter

for failure to exhaust administrative remedies, Case No. Civ-S-01-1211 WBS DAD P, plaintiff

filed a grievance with respect to cell housing reviewed by defendant CMF Senior Medical

Technical Assistant (MTA) T. Donahue, and denied by defendant CMF-V Chief Medical Officer

(CMO) J. Bick.  At the second level, plaintiff's grievance was reviewed by defendant R.

Andreason, also, apparently, CMO at CMF, according to plaintiff, and denied by defendant N.

Khoury, Chief Deputy of Clinical Services.  AC, p. 9.  At the third level, N. Grannis did not

\\\\\

---

[1] Two defendants have been dismissed from this action.  See Order, filed on May 16, 2006.

[2] The original complaint was filed on April 4, 2005.

[3] Plaintiff proceeds against the entity defendants solely on his claims pursuant to the Americans with Disabilities Act (ADA).  See Order, filed on March 15, 2006, n. 1.

[4] Neither plaintiff's page numbering in his amended complaint nor in his opposition to the pending motion corresponds with the pagination of the court's electronic docketing system; only the electronic pagination of these filings is referenced.

1  review the appeal "due to a time constraint pretense."[5]  Id.

2          After the grievance processes within CDCR and the Board of Control were

3  complete, defendant Correctional Sergeant S. Murray moved plaintiff to a dormitory bed on

4  December 17, 2004, placing plaintiff in view of large exterior windows and exposing him to

5  large fluorescent lights from 5:00 p.m. to 11:30 p.m.  This exposure caused plaintiff to suffer

6  several migraine headaches until he was moved to a different dorm bed on January 27, 2005.

7  AC, p. 10.

8          Plaintiff's new location, where he remained at the time of the filing of his

9  amended complaint, placed him directly before the middle of a large exterior window, causing

10  him numerous migraine headaches.  AC, pp. 10-11.

11          Plaintiff's neurologist, Dr. Capozzoli, not a defendant, had prescribed

12  Zolmitriptan, apparently for plaintiff's migraines, but the prescription had lapsed because

13  plaintiff did not need it while plaintiff had been housed in a cell with tinted windows.  When

14  plaintiff tried to obtain Zolmitriptan, after the prescription had been renewed as of December 16,

15  2004, it was not made available to him until February 1, 2005.  AC, p. 11.

16          On January 27, 2005, the day plaintiff moved to the second dorm location, P-139-

17  L, defendant S. Moreno, CMF Unit 1 Facility Captain, ordered the Unit 1 staff to keep the dorm

18  lights on from 8:00 a.m. until 10:00 p.m., for institutional safety and security purposes.  This

19  completely deprived plaintiff of the ability to avoid all brightly lit areas.  Id.  When plaintiff

20  attempted to address his medical problem informally, defendant Bick apparently failed to review

21  plaintiff's medical file because in his written response, he stated wrongly that the issue did not

22  implicate the ADA.  Plaintiff's Type I ("brittle") diabetes and visual light inability or impairment

23  are conditions limiting plaintiff's major life activities covered by the ADA.  AC, pp. 11-12.  His

24  visual light impairment has been recognized as an ADA disability in his records since April 5,

25  _____

26          [5] Allegations with respect to N. Grannis and M. Cry will not be referenced further, as
these parties have been dismissed from this action.

3

1    2000.  AC, p. 12.

2           Plaintiff states that a copy of a May 25, 2005, CDC-128-C medical chrono

3    (Exhibit (Exh.) 31 to AC, p. 126) was brought to defendant Thomas, who thereafter refused to

4    move plaintiff to a cell, thus showing deliberate indifference to plaintiff's serious medical

5    condition.  Id.  The text of the copy of the chrono plaintiff attaches,[6] containing signatures by

6    both Dr. Capozzoli and defendant CMO Bick, states:

7           I would recommend that Mr. Stringham be provided with cell
            housing (single cell housing not required).  Mr. Stringham has
8           diabetes with severe neuropathy involving also autonomic
            neuropathy affecting his bowel and bladder control.  Additionally,
9           he has diabetic retinopathy and vascular headaches with
            photophobia.  Mr. Stringham has a chrono which permits him to
10          wear dark glasses and cover his cell windows with tinting material
            for the above diagnoses.  He is also wheelchair dependent as a
11          result of his neuropathy.  For all of the above reasons, I recommend
            that he be allowed to live in a cell rather than a dorm environment,
12          which is less conducive to accommodating his above-mentioned
            medical needs.  This chrono is valid for one year (through May 15,
13          2006), subject to annual renewal and to custody and institutional
            safety requirements.
14

15   AC, pp. 12-13, 126.  (It appears in the copy of the exhibit showing both signatures of Dr.

16   Capozzoli and defendant Dr. Bick that defendant CMO Bick has also underlined and initialed the

17   last five words of the chrono referencing safety requirements).

18          When plaintiff informed Dr. Capozzoli that the chrono did not get him moved to a

19   cell on July 13, 2005, Dr. Capozzoli noted in plaintiff's medical file that he told plaintiff he

20   should appeal the decision "since it was a medical recommendation based on his diagnosis & that

21   it was a strong recommendation that I would support if asked to by the committee."  AC, p. 13 &

22   Exh. 32 at p. 127.

23          Plaintiff points to various exhibits demonstrating his need for cell housing

24   because he is unable to safely navigate a dorm environment due to, inter alia, "severe

25   _____

26          [6] The court notes that defendant Bick, in response to plaintiff's motion, has attached, inter
     alia, a copy of this identical chrono as part of attachment 2, p. 13, to his declaration.

1  sensorimotor polyneuropathy" or numbness in his feet, and "right Charcot joint" or "Charcot

2  foot."  AC, p. 13, Exhs. 1 - 6, 17-19, 26-29, at pp. 96-101, 112-114, 121- 124.

3            Plaintiff claims that dorm housing has not allowed for safe passage of his

4  wheelchair between lockers and bunk beds and that his lack of immediate toilet access in a dorm,

5  which he has to share with up to eleven other inmates, has caused him episodes of pain and

6  suffering.  AC, p. 14.

7            Plaintiff cannot safely operate his wheelchair in the dorm, requiring that he walk

8  some 25 feet to the restroom, numerous times during the day and night, without handrails,

9  causing him to lose his balance and stumble into bunk beds and lockers.  AC, pp. 14, 18-19.

10            Plaintiff alleges that after he had been allowed window tint for four years,

11  defendant Bick inexplicably refused to approve plaintiff's window tint needs in March of 2004,

12  thus facilitating the staff's moving plaintiff to a dorm.  When, in February of 2005, defendant

13  Bick reversed himself and approved plaintiff's access to window tint (AC, Exh. 29, p. 124),

14  plaintiff had been placed in a dorm for three months and custody staff refused to move him into a

15  cell where he could make use of window tint.  AC, p. 15.

16            Plaintiff's headaches, which arise daily from his exposure to and intolerance of

17  light, lead to at least two migraines a week, and have occurred since his December 17, 2004,

18  move to a dorm.  Defendants are aware of plaintiff's inability to tolerate light but are deliberately

19  and callously indifferent to his serious medical needs in violation of his rights under the Eighth

20  Amendment.  AC, pp. 15-16.

21            Defendants' assertion (AC, Attachment 2H p 66) that plaintiff's light intolerances

22  can be ameliorated with dark glasses is untrue because plaintiff requires prescription lenses and

23  the dark glasses do not fit well enough to block intolerable peripheral light; defendants'

24  representation that the dark glasses can fit over plaintiff's prescription glasses runs counter to the

25  manufacturer's instructions.  AC, p. 17.  Moreover, plaintiff asks why, if plaintiff can be

26  otherwise adequately accommodated, he has been issued two subsequent chronos for tinted

1  windows.  AC, p. 17, Exhs. 29, 31 at pp. 124, 126.

2          In addition to alleging that defendants have violated his rights under the Eighth

3  Amendment, he also claims that he is totally medically disabled with regard to his need for an

4  orthotic brace with cane, wheelchair and crutches, that he is disabled under the ADA, 42 U.S.C.

5  §§ 12101, et seq., with respect to his Type 1 brittle insulin-dependent diabetic condition, with

6  secondary medical complications as well as his headaches.  AC, pp. 20-21.  Plaintiff alleges that

7  defendants are aware of his disabilities, provided accommodations for them for years, but now

8  refuse to do so.  AC, p. 21.  Plaintiff seeks permanent injunctive relief under the ADA against the

9  entity defendants in the form of being placed in cell housing for the remainder of his prison term;

10  that he be allowed to affix window tint to exterior cell windows; that he maintain his dark

11  eyeglasses as needed.  Plaintiff seeks money damages from the individual defendants.

12  Additional Background

13          Plaintiff made a showing adequate to be granted a preliminary injunction in the

14  form of enjoining defendants to place plaintiff in a window tinted cell for the pendency of this

15  lawsuit.  On 3/15/07, the court granted plaintiff's motion for a preliminary injunction, directing

16  defendants "to place plaintiff in window tinted cell housing within 30 days."  See Order, filed on

17  3/15/07, adopting the Findings and Recommendations, filed on 1/08/07.

18          In an order denying plaintiff's motion for appointment of independent medical

19  expert witnesses, the court observed, inter alia, that, in unsuccessfully opposing plaintiff's

20  motion for a preliminary injunction, defendants had confirmed:

21          that plaintiff suffers from myriad serious medical conditions....
            They do not dispute that until March of 2004, plaintiff was
22          provided with cell housing with window tinting.  Defendants do
            not contend that plaintiff's serious medical condition has any
23          chance of ameliorating.  Plaintiff has submitted evidence that his
            treating physician has continued to make a medical
24          recommendation of his need for window tinting.  Defendants,
            including a defendant physician, have explicitly conceded that
25          plaintiff, incarcerated at CMF since 1989, has been a Type 1 brittle
            diabetic since his youth, who has developed other serious medical
26          conditions, including diabetic retinopathy, photophobia,

6

1
2
3
4
5

neuropathy, bowel and bladder issues. Defendant Bick affirms that since 1998, plaintiff has been classified as permanently mobility impaired in his lower extremities, averring that this means that he cannot walk up a flight of stairs or more than a hundred yards without walking aids. Defendant Bick, as previously noted, concedes that plaintiff's medical conditions "are all medical conditions that substantially limit plaintiff's major life activities and are therefore defined as a serious medical need pursuant to the Americans with Disabilities Act."

6   Order, filed on 3/24/08, p. 7, quoting Findings and Recommendations, filed on 1/8/07, pp. 19-20,

7   adopted by Order, filed on 3/15/07.

8   Motion for Summary Judgment

9   Defendants move for summary judgment on the grounds that: 1) plaintiff failed to

10  exhaust administrative remedies before bringing suit; 2) defendants are entitled to summary

11  judgment because there is no dispute as to a material fact; 3) plaintiff fails to demonstrate that

12  defendants were deliberately indifferent to his serious medical needs; 4) defendants are entitled

13  to qualified immunity; 5) plaintiff has failed to meet his burden of proof under the ADA. Motion

14  for Summary Judgment (MSJ), pp. 1-41.[7]

15  As is set forth below, defendants' motion under the first ground, number 1 above,

16  is construed as a non-enumerated Fed. R. Civ. P. 12(b) motion, and it should be granted.

17  *Undisputed Facts*

18  Plaintiff has been incarcerated at California Medical Facility (CMF) since 1989.

19  Plaintiff is a Type 1 brittle, insulin-dependent diabetic with photophobia, Charcot foot,

20  autonomic neuropathy, and sensorimotor polyneuropathy. The record also shows plaintiff has

21  also been described as suffering from severe peripheral neuropathy with Charcot neuropathy of

22  the right foot and proliferative diabetic retinopathy and vascular headaches with photophobia.

23  AC, Exs. 1-6, 25-29, 31, copies of medical chronos. Due to these conditions, plaintiff suffers

24

25  [7] As with plaintiff, the undersigned references the page numbering of the court's
26  docketing system. References to the MSJ are to the pages contained in docket entry # 61-2, unless otherwise identified.

from light sensitivity, numbness in his feet causing instability, and bowel and bladder problems.
Plaintiff maintains that he suffers from migraine headaches with exposure to light, which appears
to be confirmed by the diagnosis of vascular headaches with photophobia.  AC, Ex. 31.   From
2000 until December 17, 2004, plaintiff had cell-based housing with window tint, which
placement was predicated on chronos recommending such housing for one year periods.  The last
chrono recommending cell-based housing expired on 11/28/02.  Plaintiff filed an inmate appeal
on 1/30/04,  Log No. 04-M-0192, seeking renewal of cell-based housing with window tint, which
was denied through the second level, and was rejected for the stated reason that it was untimely
at the director's level on 7/16/04.  Plaintiff received a chrono, dated 3/09/04, in which defendant
Bick had stricken language regarding plaintiff's ability to have window tint.  A second appeal,
filed on 4/30/04, Log No. 04-M-741, also sought renewal of the use of window tint, complaining
of defendant Bick's action in striking the use of window tint from his medical chrono.  This
grievance was deemed a duplicate of  Log No. 04-M-0192 on 5/26/04, and evidently rejected at
the first or second level of review, and was later rejected at the director's level, on 7/19/04, on
the ground that it had not been properly completed through the second level of review.  Log No.
CMF-05-1431 was plaintiff's CDC-1845 request for reasonable accommodation, seeking cell-
based housing but centered on his right Charcot foot and his severe neuropathy in both feet as the
basis for the accommodation sought, was filed on 7/13/05, and exhausted with a denial from the
director's level on 12/23/05.  Plaintiff's original complaint, filed on 4/04/05, was dismissed with
leave to amend.  Plaintiff's amended complaint was filed on 9/16/05.

        Plaintiff was denied a window-tinted cell from 12/17/04 through 3/20/07, when
this court granted plaintiff's motion for preliminary injunction.  Pursuant to the preliminary
injunction, plaintiff has been housed in a window-tinted cell since 3/20/07.  Plaintiff is classified
as a Level II, Medium A custody inmate and has been deemed an "Intermittent Wheelchair User,
known as DPO under the Armstrong Remedial Plan.  Plaintiff must be housed in a lower bunk.
Plaintiff has been found to be totally medically disabled under the ADA, and has been provided

1   crutches, a wheelchair, an orthotic brace, a cane, a foam pillow, daily showers, shaving

2   exemption, cafeteria carry-out assistance, dark glasses, elevator pass, although plaintiff maintains

3   that it was his family that provided his last two pairs of dark prescription eyeglasses.  Opposition

4   (Opp.), p. 14.  On 12/17/04 defendant Murray moved plaintiff from a cell to a lower bunk in a

5   third floor dormitory.  On 1/27/05, plaintiff was moved to another dorm, which is on the first

6   floor.  On the same day, 1/27/05, defendant Moreno issued a policy that required all lights be left

7   on in Unit 1 from 8:00 a.m. to 10:00 p.m.[8]  Plaintiff received a chrono, dated 5/16/05,

8   recommending cell-based housing with window tint for one year, signed by non-defendant Dr.

9   Capozzoli and defendant Bick.  AC, Ex. 31.  The chrono ends with the notation that it is "subject

10  to annual renewal and to custody and institutional safety requirements."  Id.  Plaintiff's claim

11  against defendant Thomas is based on his having refused to move plaintiff to a cell after reading

12  the 5/16/05 chrono.  On 7/13/05, Dr. Capozzoli wrote a note in plaintiff's medical file indicating

13  that his recommendation for cell housing "was a medical recommendation based on his

14  [plaintiff's] diagnosis & that it was a strong recommendation that I would support if asked to by

15  the committee."  AC, Ex. 32.

16  Administrative Exhaustion

17          Defendants contend that plaintiff failed to exhaust his administrative remedies

18  before filing this action.  Plaintiff disputes this.  As defendants note (MSJ, p.10) , they raised and

19  preserved the affirmative defense of non-exhaustion in their Answer to the Amended Complaint.

20  See Answer, filed on 6/16/06, p. 3.  The Ninth Circuit has long held that failure to exhaust

21  nonjudicial remedies, if raised in a summary judgment motion, should be treated as if raised in a

22  "nonenumerated" Fed. R. Civ. P. 12 (b) motion to dismiss.  Ritza v. International

23  Longshoremen's and Warehouseman's Union, 837 F.2d 365, 368-69 (9th Cir.1988).  In such a

24

25          [8] While plaintiff contends that there is a correlation between the implementation of the
dorm lighting policy simultaneously with his move, defendants aver that the lighting policy was
instituted for institutional safety and security reasons and just happened to occur when plaintiff
26  was moved to that unit/floor.

1   motion to dismiss, the court has "broad discretion" to resolve a factual dispute.  Id. at 369.

2                    *Legal Standard under Non-Enumerated Fed.R.Civ.P. 12(b)*

3              In a motion to dismiss for failure to exhaust administrative remedies under non-

4   enumerated Rule 12(b) of the Federal Rules of Civil Procedure, defendants "have the burden of

5   raising and proving the absence of exhaustion." Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir.

6   2003).  The parties may go outside the pleadings, submitting affidavits or declarations under

7   penalty of perjury, but plaintiff must be provided with notice of his opportunity to develop a

8   record.  Wyatt v. Terhune, 315 F.3d at 1120 n.14.  The court provided plaintiff with such fair

9   notice by Order, filed on 4/11/06.

10             Should defendants submit declarations and/or other documentation demonstrating

11  an absence of exhaustion, making a prima facie showing, plaintiff must refute that showing.

12  Plaintiff may rely upon statements made under the penalty of perjury in the complaint if the

13  complaint shows that plaintiff has personal knowledge of the matters stated and plaintiff calls to

14  the court's attention those parts of the complaint upon which plaintiff relies.  If the court

15  determines that plaintiff has failed to exhaust, dismissal without prejudice is the appropriate

16  remedy for non-exhaustion of administrative remedies.  Wyatt v. Terhune, 315 F.3d at 1120.

17                              *PLRA Requirements*

18             The Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a) provides that,

19  "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any

20  other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until

21  such administrative remedies as are available are exhausted."  Inmates seeking injunctive relief

22  must exhaust administrative remedies.  Rumbles v. Hill, 182 F.3d 1064 (9th Cir. 1999).  In Booth

23  v. Churner, 532 U.S. 731,741, 121 S. Ct. 1819, 1825 (2001), the Supreme Court held that

24  inmates must exhaust administrative remedies, regardless of the relief offered through

25  administrative procedures.  Therefore, inmates seeking money damages must also completely

26  exhaust their administrative remedies.  Booth v. Churner, 532 U.S. 731, 121 S. Ct. 1819 (inmates

                                          10

1  seeking money damages are required to exhaust administrative remedies even where the

2  grievance process does not permit awards of money damages).  The United States Supreme Court

3  has held that exhaustion of administrative remedies under the PLRA requires that the prisoner

4  complete the administrative review process in accordance with the applicable procedural rules.

5  Woodford v. Ngo, 548 U.S. 81, 126 S. Ct. 2378 (2006).  Thus, in the context of the applicable

6  PLRA § 1997e(a) exhaustion requirement, any question as to whether a procedural default may

7  be found should a prisoner plaintiff fail to comply with the procedural rules of a prison's

8  grievance system has been resolved: the PLRA exhaustion requirement can only be satisfied by

9  "proper exhaustion of administrative remedies....," which means that a prisoner cannot satisfy the

10  requirement "by filing an untimely or otherwise procedurally defective administrative grievance

11  or appeal."  Woodford v. Ngo, supra, at 84, 126 S. Ct. at 2382.   Moreover, 42 U.S.C. § 1997e(a)

12  provides that no action shall be brought with respect to prison conditions *until* such

13  administrative remedies as are available are exhausted.  McKinney v. Carey, 311 F.3d 1198 (9th

14  Cir. 2002).

15                    *Administrative Exhaustion Procedure*

16           In order for California prisoners to exhaust administrative remedies for non-staff

17  complaints, they must proceed through several levels of appeal:  1) informal resolution, 2) formal

18  written appeal on a CDC 602 inmate appeal form, 3) second level appeal to the institution head

19  or designee, and 4) third level appeal to the Director of the California Department of Corrections.

20  Barry v. Ratelle, 985 F. Supp. 1235, 1237 (S.D. Cal. 1997) (citing Cal. Code Regs. tit. xv, §

21  3084.5).  A final decision from the Director's level of review satisfies the exhaustion

22  requirement.  Id. at 1237-38.

23           However, where a prisoner asks for accommodation for an ADA disability, the

24  filing of the "request for accommodation form" *along with completion of the appeal process*

25  thereafter satisfies PLRA exhaustion.  Butler v. Adams, 397 F.3d 1181 (9th Cir. 2005).

26  \\\\\

1       *Discussion*

2              Defendants point to three grievances related to this action that were filed by

3       plaintiff: 1) Log No. 04-M-0192, 2) Log No. 04-M-741 and 3) Log No. CMF-05-1431.  In the

4       first of these grievances, Log No. 04-M-0192, initiated on 1/30/04, plaintiff stated that the last

5       chrono that he had for cell-based housing expired on 11/28/02, and he sought a renewal for cell-

6       based housing with window tint, indicating that defendant Bick would not renew the chrono as to

7       the recommendation for tinted window cell housing.  See MSJ, p. 17; Amended Complaint (AC),

8       p.4 & attachment 2-2L.  Plaintiff points out that he was still housed in a cell at the time of filing

9       that inmate appeal; plaintiff states that he sought to maintain his cell housing to provide for his

10      medical needs and to prevent migraines and injury from falling and he was not yet subject to

11      bowel and bladder pains.  Opp., p. 15.  A review of the appeal indicates that plaintiff has set forth

12      that he needed cell housing with window tint to avoid migraines and for his diabetic retinopathy

13      and past extensive laser treatment, and also refers to a need for cell housing due to bowel and

14      urinary needs and because he could not safely navigate a dorm because of chronic degenerative

15      knee problems associated with his diabetes.  AC, Attachment 2C.  Defendants note plaintiff has

16      conceded that while this appeal was pursued through the second level, it was rejected as untimely

17      on 7/16/04 at the director's level.  Id.  Plaintiff contends that the rejection on grounds of

18      untimeliness was a pretext.  According to Cal. Code Regs. tit.xv, § 3084.6(c), "an appellant must

19      submit the appeal within 15 working days of the event or decision being appealed, or of receiving

20      an unacceptable lower level appeal decision."  Grievance Log No. 04-M-0192 indicates the

21      second level response was returned to plaintiff on 4/26/04, and thereafter was not submitted by

22      plaintiff for third level review until 6/07/04, after which it was rejected as untimely at the third

23      level on 7/16/04.   MSJ, p. 17, Grannis Declaration, ¶ 12; AC, p. 4, Attachments 2L, 3G, Opp., p.

24      16.

25              As to Log No. 04-M-741, this grievance was submitted on 4/30/04, wherein

26      plaintiff complained that he had received a chrono on 4/16/04 on which defendant Bick had

1  drawn a line through the section of plaintiff's 3/09/04 chrono from Dr. Crapotta (see AC, Ex. 5),

2  an opthalmologist, regarding the use of window tint.  This appeal was apparently rejected as a

3  duplicate of  Log No. 04-M-0192 on 5/26/04, and was rejected at the director's level, on 7/19/04,

4  because it had not processed through the administrative review procedure properly, i.e., evidently

5  by having been earlier rejected.  MSJ, pp. 17-18, AC, attachment 3D, 3I.  Plaintiff argues that he

6  attached both Log No. 04-M-0192 and Log No. 04-M-741, after the latter was rejected as a

7  duplicate, and submitted the documents together as an appeal on 6/07/04 to the director's level,

8  which he contends was timely because plaintiff had received the duplicate appeal, which was

9  rejected on 5/26/04, some undefined number of days later.  Opp., p. 16, AC, Attachment 3A.

10  Plaintiff also states that he included, as well, a long outdated grievance, Log No. CMF-00-M-

11  1266, to explain his "previous success on this matter."  Opp., p. 16, AC, Attachments 4A - 4N,

12  2J ¶ 3.  To summarize, plaintiff's Log No. CMF-00-1266, filed on 9/12/00, indicates that an

13  earlier 8/15/00 appeal had been resolved favorably for plaintiff in that he had been moved from a

14  dorm without window tint to a cell with window tint on 8/18/00.  AC, Attachment 4L - 4N.

15  However, as plaintiff was moved back to the dorm on 8/22/00, plaintiff was resubmitting his

16  appeal for a window-tinted cell.  Id.  Ultimately, nevertheless, plaintiff withdrew Log No. CMF-

17  00-1266 appeal as of 10/16/00, apparently before a first level response was generated, because he

18  had received the relief sought in the form of a CDC 128-C chrono which allowed him to be

19  housed in a window tinted cell .  AC, Attachments 4M, 2J ¶3.

20          Plaintiff s bundling of his appeals, including the appeal withdrawn in 2000 he

21  provided for background, and filing them together on 6//07/04 to the director's level, does not

22  demonstrate how the rejection of the first appeal, Log No. 04-M-0192, evidently returned to him

23  on 4/26/04, as untimely, was unjustified, in accordance with the applicable prison regulations

24  (see above).  Nor does plaintiff, whose history indicates that he is conversant enough with the

25  \\\\\

26  \\\\\

13

1   prison administrative grievance process,[9] offer a substantive explanation as to why he simply did

2   not file this appeal within the 15-working day period following the denial in the second level

3   response.  Nor does the separate rejection of the second appeal, Log No. 04-M-741, which had

4   been rejected at a lower level as duplicative, signify that plaintiff exhausted his administrative

5   remedies as to this grievance.  Plaintiff argues the prison had "joined" the two grievances by

6   stamping the second one as a duplicate of the first which was denied on 4/20/04.  Opp., pp. 16,

7   34.  He, apparently conversely, points to CAL. CODE REGS. tit.xv, § 3084.3(c)(2)[10] to contend that

8   the second appeal's rejection as a duplicate ended the appeal process as to that grievance.  This

9   argument does not clarify why plaintiff waited for the response to this appeal, ultimately rejected,

10  before determining that he should proceed to the third level with the first appeal, Log No. 04-M-

11  0192, or how the filing of that first appeal on 6/7/04, could have been timely.  As noted above,

12  the Supreme Court has made clear in Woodford v. Ngo, supra, at 84, 126 S. Ct. at 2382, that

13  plaintiff must adhere to the prison's procedural requirements in seeking to exhaust his

14  administrative remedies in order for his claims to be deemed properly exhausted.

15          Defendants acknowledge that plaintiff submitted a CDC-1845, inmate request for

16  reasonable accommodation, Log No. CMF-05-1431, seeking window-tinted cell-based housing

17  (focusing however on his right Charcot foot and the severe neuropathy in both his feet as the

18  basis for the accommodation sought) which was ultimately exhausted through the director's

19  level.  MSJ, p. 18, citing Grannis Dec. ¶ 12.  However, defendants contend that plaintiff did not

20  even initiate this appeal until 7/13/05, several months after he filed this action, on 4/04/05, and

21  did not receive the third or director's level response until 12/23/05, some nine months after this

22  action was filed.  MSJ, p. 18, Grannis Dec ¶ 12, & Ex. B.  Plaintiff asserts that this third

---

23

24      [9]  Plaintiff, himself, avers in the amended complaint that he had had a prior action he
    brought in federal court, Case No. Civ-S-01-1211 WBS DAD P, dismissed on the same matter
    for failure to exhaust administrative remedies.  AC, p. 9.

25

26      [10]  Under § 3084.3(c)(2), "an appeal may be rejected" if it "duplicated the appellant's
    previous appeal upon which a decision has been rendered or is pending."

1    grievance/request was not even filed for the purpose of exhausting his claim administratively

2    with respect to this action, stating instead that it was generated to support his later request for a

3    preliminary injunction filed in this action.  Opp., pp. 17.  Even if the appeal were to be deemed

4    the one that did finally exhaust plaintiff's administrative remedies as to the claims herein,

5    however, plaintiff would be foreclosed by <u>McKinney v. Carey</u>, <u>supra</u>, 311 F.3d 1198, which

6    precludes proceeding on a claim in federal court until the completion of the administrative

7    exhaustion process.[11]

8              In further opposition, plaintiff also asserts that the California Board of Control to

9    which plaintiff had submitted his grievance, apparently on 8/09/04 (AC, attachments 1A through

10   1E), encompassing the allegations of his amended complaint herein, had determined that his

11   administrative remedies had been exhausted and that he had six months to sue.  Opp., pp. 6, 35,

12   AC, attachments 1F, 1G, 1H, letters from Victim Compensation and Government Claims Board,

13   dated 9/03/04, 10/18/04,11/04/04.  However, such exhaustion refers to any state tort claims

14   plaintiff might seek to pursue in court and does not act as substitute for, or a method to

15   circumvent, the PLRA administrative exhaustion requirement.  Nor is plaintiff's reliance (Opp.,

16   p. 35) on this court's having found this action appropriate for service availing because the court

17   did not thereby make a tacit finding that plaintiff had properly exhausted his administrative

18   remedies as failure to exhaust administrative remedies is an affirmative defense which, as noted

19   above, defendants "have the burden of raising and proving ...."  <u>Wyatt v. Terhune</u>, <u>supra</u>, 315

20   F.3d at 1119.

21

22         [11] Although plaintiff contends that the third grievance, CMF-05-M-1431, was not filed to
     exhaust the administrative remedies of this action, but rather to support his motion for a
23   preliminary injunction, he nevertheless also argues that defendants are wrong in light of L.R. 15-
     220, and should be sanctioned for referencing the date of the original complaint, rather than the
24   amended complaint, as the date by which his administrative remedies needed to be exhausted.
     Opp., pp. 17, 34.  However, defendants are correct that his remedies must be exhausted prior to
25   the *initiation* of the lawsuit; this is so no matter on what subsequently filed amended complaint
     on which plaintiff proceeds.  In any event, the third grievance was not even exhausted until after
26   the filing of the amended complaint.

1   Conclusion

2           As to plaintiff's claims under the ADA, should plaintiff believe they should be

3   evaluated under a different standard, the Ninth Circuit has made clear that such claims must also

4   be administratively exhausted under the PLRA.  O'Guinn v. Lovelock Correctional Center, 502

5   F.3d 1056, 1062 (9th Cir. 2007) ("we hold that the plain language of § 1997e(a) and relevant

6   Supreme Court authority require prisoners bringing ADA and Rehabilitation Act claims to

7   exhaust those claims through available administrative remedies before filing suit").  As set forth

8   earlier, plaintiff could have filed a "request for accommodation form" followed by completion of

9   the appeals process.  Butler, supra.  However, as seen plainly from plaintiff's arguments, he did

10  not do this prior to filing suit.

11          Finally, the court has considered whether to adopt the exhaustion law for Title VII

12  cases which excuses exhaustion when plaintiff files a complaint along with an evidentiary

13  showing of probable success on the merits and irreparable harm if the matter of a preliminary

14  injunction is put on hold pending exhaustion.  See Berg v. Richmond Unified Sch. Dist., 528

15  F.2d 1208, 1211-1212 (9th Cir. 1975); McGinnis v. United States Postal Service, 512 F. Supp.

16  517, 521 (N.D. Cal.1980).  Clearly, even in the PLRA context, a prisoner must not await the

17  conclusion of the exhaustion process prior to seeking emergency injunctive relief if to do so

18  would result in irreparable harm from a clear violation of constitutional rights.  Jackson v. Dist.

19  of Columbia, 254 F.3d 262, 267-268 (D.C. Cir. 2001).  However, as that case also recognized,

20  the proper procedure in a PLRA case is to enter the preliminary injunction (if warranted), allow

21  exhaustion concurrent with the preliminary injunction proceedings, afterwards dismiss the case

22  as it was filed prior to complete exhaustion, but then allow refiling.  The undersigned agrees that

23  such should happen here.  Plaintiff herein has had enough time to complete exhaustion, or he

24  should complete exhaustion at this time.

25          This court, having found that plaintiff failed to exhaust administrative remedies

26  prior to bringing this lawsuit, this action must be dismissed.  The court will therefore not reach

1  defendants' arguments for summary judgment or plaintiff's cross-motion for summary judgment.

2          As a note concerning plaintiff's claims for permanent injunctive relief,

3  plaintiff's Ex. 40, to his opposition, a copy of his classification committee annual review

4  memorandum dated 7/14/04, among other exhibits, shows that plaintiff had a Totally Medically

5  Disabled status and a "medical condition per the Armstrong Remedial Plan." Moreover, his

6  inclusion within the Armstrong[12] plaintiff class has been noted in another of plaintiff's cases

7  before the undersigned, CIV-S-04-1530 JAM GGH P,[13] of which this court takes judicial

8  notice.[14] Although the court need not reach defendants' further arguments as plaintiff has been

9  found to have failed to properly exhaust his administrative remedies herein, any further

10 injunctive relief that plaintiff might seek to ensure that he is housed in a window tinted cell or

11 other accommodation should be pursued by way of the Armstrong class action. As the court has

12 elsewhere stated:

13              It is the very expansive breadth of the "Other" category included in
               the Armstrong Remedial Plan that demonstrates that it is meant to
14             embrace any serious medical condition of ADA-qualified inmates.
               This court finds that these defendants are bound by procedures as a
15             result of the class action at issue that fully encompass any relief
               this court could order rendering the injunctive relief sought by this
16             action moot. See e.g., Pierce v. County of Orange, 526 F.3d 1190,
               1206, 1207 (9th Cir. 2008).

17

18 CIV-S- 04-1530 JAM GGH P, Findings and Recommendations, filed on 7/22/08, p. 16.

19          Accordingly, IT IS RECOMMENDED that:

20          1. Defendants' motion for summary judgment, filed on 9/26/07 (# 61), construed

21 in part as a motion to dismiss for failure to exhaust administrative remedies, pursuant to

22          [12] Armstrong v. Davis, et al., No. CIV 94-2307 (N.D. Cal.).
23

24          [13] See Findings and Recommendations, filed on 7/22/08, in CIV-S-04-1530, now
   pending before the district judge.

25          [14] Judicial notice may be taken of court records. Valerio v. Boise Cascade Corp., 80
   F.R.D. 626, 635 n.1 (N.D. Cal. 1978), aff'd, 645 F.2d 699 (9th Cir.), cert. denied, 454 U.S. 1126
26 (1981).

1   nonenumerated Fed. R. Civ. 12(b), be granted on the ground that plaintiff failed to exhaust his

2   administrative remedies prior to bringing this lawsuit, and this action be dismissed, without

3   prejudice;

4          2.  Defendants' motion for summary judgment otherwise (#61), and plaintiff's

5   cross-motion for summary judgment, filed on 12/07/07 (# 70) be denied as moot.

6          These findings and recommendations are submitted to the United States District

7   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

8   days after being served with these findings and recommendations, any party may file written

9   objections with the court and serve a copy on all parties.  Such a document should be captioned

10  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

11  shall be served and filed within ten days after service of the objections.  The parties are advised

12  that failure to file objections within the specified time may waive the right to appeal the District

13  Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

14  DATED: 09/02/08

15                                        /s/ Gregory G. Hollows
                                          _____
16  GGH:009                               UNITED STATES MAGISTRATE JUDGE
    stri0664.msj

17

18

19

20

21

22

23

24

25

26